720 So.2d 1179 (1998)
STATE of Louisiana
v.
Eleston FISHER.
No. 97-K-1133.
Supreme Court of Louisiana.
September 9, 1998.
*1181 Sherry Watters, Dwight M. Doskey, New Orleans, for Applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Karen G. Arena, Kenner, for Respondent.
LEMMON, Justice.[*]
During the trial in which defendant was convicted of second degree murder, the prosecutor introduced statements defendant allegedly made while in police custody. The principal issue prompting this court's grant of certiorari is whether the police had probable cause to make the arrest which led to defendant's statements during custodial investigation.

Facts
Late in the afternoon of December 11, 1992, Kevin Volson, a resident of the neighborhood where the crime occurred, was playing a video game in a store. Volson saw the victim and a person named "Billy" leave the store together. Shortly thereafter, he heard a shot, and Billy returned to the store announcing that the victim had been shot. Volson went outside, where he saw defendant in the middle of the street shouting for help because someone had been shot in the alley. Volson found the victim in the alley dying of a shotgun wound.
Officer Norman Taylor, who had grown up with defendant in the neighborhood where the shooting occurred, responded to a radio report of the shooting. Other officers were already on the scene, but they found no weapon or witnesses.
Later that same evening, some unnamed "people in the neighborhood," none of whom had seen the shooting or heard defendant admit the crime, told Officer Taylor that defendant had shot the victim, who was a reputed "crack" dealer. Taylor told the informers to tell defendant that he (Taylor) was looking for him.
Officer Taylor did not communicate with anyone in the homicide division about the information from the neighbors,[1] nor did he attempt on his own to question defendant, although he knew both defendant and his family lived in the neighborhood.[2] Thus Taylor made no significant effort to follow up the lead he received from the informants.
More than five months after the murder, Officer Taylor and another policeman saw defendant riding as a passenger in a car leaving the driveway of a housing project. Taylor "hollered" that he wanted to talk to defendant, who leaned out the window and said he would call Taylor. The officers then *1182 followed the car for several blocks and eventually stopped the car with flashing lights. According to Officer Taylor, there was no speeding or erratic or evasive driving, and the only reason the police stopped the car was to question defendant about the murder.
Taylor and his patrol partner removed defendant and the driver from the car. Taylor then handcuffed defendant and placed him in the back seat of the police car, while another officer spoke to the driver.
While Taylor was driving defendant to the police station, he questioned defendant about the murder. Defendant allegedly stated that he accidentally shot the victim while robbing him. Later at the police station, while waiting to be taken to the homicide division, defendant allegedly told another officer that the victim "got what he deserved." The alleged statements were neither written nor recorded.
Defendant's motion to suppress the alleged statements was denied. At trial, defendant denied making any statement to the police, and the case for the prosecution consisted of (1) Officer Taylor's testimony that defendant said he accidentally shot the victim while robbing him; (2) another officer's testimony that defendant said the victim "got what he deserved"; and (3) Volson's testimony that defendant was standing in the street some minutes after the shooting. There were no eyewitnesses to the murder, no murder weapon was found, and no physical evidence linked defendant to the crime except his post-shooting presence at the scene. The jury found defendant guilty as charged.
The court of appeal affirmed. 96-0004 (La.App. 4th Cir.4/2/97); 692 So.2d 713. The intermediate court first determined that the "circumstances were sufficient to justify an investigatory stop" based on the neighborhood information that defendant had committed the murder. 96-0004 at p. 8; 692 So.2d at 718. The court further concluded that "[b]ecause the defendant did not comply with the investigatory stop but left, [the officers] had probable cause to follow the two suspects and to stop, detain, and arrest the defendant." 96-0004 at p. 9; 692 So.2d at 719. The court observed that the reasonable suspicion ripened into probable cause because of defendant's failure to comply with Taylor's request and of defendant's flight indicating his culpability. One judge dissented, believing that defendant was arrested without probable cause and that his statements should have been suppressed.
This court granted certiorari to determine whether defendant's alleged statements should have been suppressed because they were the product of an illegal arrest without probable cause. 97-1133 (La.10/31/97); 703 So.2d 2.

Admissibility of the Statements
A trial judge's ruling on a motion to suppress a confession is entitled to deference, but only if it is supported by the evidence. State v. Carter, 94-2859, p. 24 (La.11/27/95); 664 So.2d 367, 385. A reviewing court may consider the evidence presented at trial in addition to the evidence presented at the hearing on the motion to suppress.[3]State v. Green, 94-0887, p. 11 (La.5/22/95); 655 So.2d 272, 280.
The outset inquiry on the admissibility issue is whether defendant had been arrested when he allegedly made the statements. If so, the next inquiry is whether the arrest was based on probable cause, an inquiry that addresses the intermediate court's conclusion that reasonable suspicion for an investigatory stop ripened into probable cause because defendant fled from the police. If there was no probable cause to support the arrest, the third inquiry is whether the alleged statements were inadmissible as the fruit of the unlawful arrest.

(1) Arrest
In United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992), cert. denied, 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992), the court articulated a useful threetiered analysis of interactions between citizens and police under the Fourth Amendment. *1183 At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. Id.; State v. Britton, 93-1990 (La.1/27/97); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Watson, 953 F.2d at 897 n. 1; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581,104 L.Ed.2d 1 (1989)(citing Terry, 392 U.S. at 27, 88 S.Ct. 1868); State v. Moreno, 619 So.2d 62, 65 (La.1993). See also La.Code Crim. Proc. art. 215.1(A), which provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is "insufficient to justify custodial interrogation even though the interrogation is investigative." Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
At the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Watson, 953 F.2d at 897 n. 1; Moreno, 619 So.2d at 65. See also La.Code Crim. Proc. art. 213, which uses the phrase "reasonable cause."[4] The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. See Terry, 392 U.S. at 22, 88 S.Ct. 1868; State v. Flowers, 441 So.2d 707, 712 (La.1983)(noting that a less intrusive stop does not require the same "probable cause" needed for an arrest).
An arrest is "the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him." La.Code Crim. Proc. art. 201. See also Moreno, 619 So.2d at 65. Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue. State v. Thibodeaux, 414 So.2d 366 (La.1982).
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. State v. Allen, 95-1754 (La.9/5/96); 682 So.2d 713. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Allen, 682 So.2d at 719; Moreno, 619 So.2d at 65 (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty. Allen, 682 So.2d at 719; State v. Simms, 571 So.2d 145, 148 (La.1990).
In the present case, the police forcibly restrained defendant by handcuffing him and putting him in the back seat of the police car bound for the station. No reasonable person in this position could have believed he or she was "free to go," and indeed defendant was not. In addition, Officer Taylor testified that he intended to take defendant to the police station, indicating an unmistakable intent to impose a restriction on defendant's liberty more extensive than an investigatory stop.
Arrests have been found in many similar situations. See, e.g., Dunaway v. New York, 442 U.S. 200, 218-19, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)(finding that an arrest occurred when the defendant was "picked *1184 up" and brought in for questioning about a murder); United States v. Gentry, 839 F.2d 1065, 1070 (5th Cir.1988)(finding an arrest when the defendants were removed from their vehicle at gunpoint); Passman v. Blackburn, 797 F.2d 1335, 1346 (5th Cir.1986)(finding the suspect was "unquestionably" arrested by being handcuffed, placed in a police car and driven to the station).
Under the totality of the circumstances in the present case, defendant was under arrest when he allegedly made his statements.

(2) Probable cause
Having found that the police arrested defendant, we next determine whether the police had probable cause to do so. See La. Code Crim. Proc. art. 213.
The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that a "common rumor or report" is not an adequate basis for the arrest of a person. Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). "Arrest on mere suspicion collides violently with the basic human right of liberty." Id. (internal quotations and citations omitted). When the defense seeks suppression of a confession obtained through an arrest allegedly made without probable cause, the state bears the burden of proving probable cause. State v. Tokman, 412 So.2d 561 (La.1982).
Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Thomas, 349 So.2d 270, 272 (La.1977). See also Hunter v. Bryant, 502 U.S. 224, 228,112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The standard for assessing probable cause is an objective standard that must withstand the "detached, neutral scrutiny of a judge." State v. Flowers, 441 So.2d 707, 712 (La. 1983). The determination of probable cause must take into account the "practical considerations of everyday life on which ... average police officers can be expected to act." State v. Raheem, 464 So.2d 293, 296 (La. 1985). See also Miller v. East Baton Rouge Par. Sheriff's Dep't, 511 So.2d 446, 454 (La.1987)(holding that an arresting officer failed to "act as a man of average caution" by arresting a suspect based "uncritically and almost exclusively on ... an unworthy source of information").
While probable cause must be determined on the totality of the circumstances, an informant's reliability, veracity and basis of knowledge are "all highly relevant." Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Ruffin, 448 So.2d 1274, 1278 (La.1984). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant's knowledge and the informant's reliability, when examined under the totality of the circumstances, are established. Hearsay statements of anonymous informants may provide probable cause even without corroboration, if there are sufficient circumstances and details to provide a substantial factual basis for concluding that the informant is credible and that the information is reliable and was obtained under circumstances or from sources indicating its veracity. State v. Wilson, 366 So.2d 1328, 1331 (La.1978).
In the present case, Officer Taylor admitted that he arrested defendant solely on the basis of information provided to him alone by unnamed people in the neighborhood where the crime occurred. Uncorroborated hearsay from essentially anonymous informants is one of the least reliable types of information.
Officer Taylor was not required, in order to establish probable cause, to identify who told him defendant was the killer, but he was required to produce some evidence of the unnamed informants' reliability and basis of knowledge. Taylor testified that the neighborhood rumors were "common knowledge," but when asked how the informants supposedly knew that defendant was the killer or whether any of them had witnessed the murder, he testified:

*1185 Basicallywellnot witnessed the murder. Like I say, it's a small neighborhood, everybody knows everybody back there and basically know everything that goes on in the neighborhood. As far as anyone coming up and saying they actually witnessed the murder, no.
. . . . . .
There's families that's been back there for years, and it'sit's just known in the community, it was known in the community who committed the murder.
In addition to testifying that none of the informants witnessed the murder, Officer Taylor also conceded that none of them heard defendant admit committing the murder. Thus there was no evidence whatsoever of the basis for the informants' knowledge, nor was there any evidence of their veracity or reliability.
Significantly, in the five months between his hearing the rumor and making the arrest, Officer Taylor did not attempt to develop any leads pointing to defendant as the murderer. He apparently took no statements from his informants. He took no steps to track down their sources of knowledge or to locate anyone who might have heard defendant admit the crime. He took no meaningful steps to allow other officers and detectives to share and develop the information from "people in the neighborhood." On this record, the basis for Taylor's arresting defendant was nothing more than unsubstantiated gossip.[5]
The court of appeal, recognizing that the neighborhood gossip did not constitute probable cause, reasoned that there was reasonable suspicion to stop defendant, and that the reasonable suspicion ripened into probable cause when the car carrying defendant fled from the police, after Taylor shouted his desire to talk to defendant. However, the evidence of defendant's "flight to avoid apprehension" is equivocal at best.
Officer Taylor testified that he hollered he "wanted to talk" to defendant, who was a passenger in the car, and defendant replied that "he was going to call [Taylor]." Since Taylor and defendant had known each other for over twenty years and Taylor apparently knew where defendant lived, Taylor's yelling communication of his desire to talk can hardly be construed as a command to defendant (much less to the driver) to stop the car immediately. Likewise, defendant's response, in this context, suggested there was no flight to avoid apprehension. In addition, the car carrying defendant apparently continued on its way in a normal speed and manner, and there is no evidence of a highspeed chase. This record simply does not establish or even suggest flight by the driver in an effort to evade police. In sum, the skimpy evidence of flight did not convert any reasonable suspicion into probable cause to justify an arrest.

(3) Statements as Fruit of an Illegal Arrest
The final inquiry is whether the statements must be suppressed as being the fruit of the unlawful arrest. Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Statements given during a period of illegal detention are inadmissible, even though voluntarily given, if they are the product of illegal detention and not the result of an independent act of free will. Florida v. Royer, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
The fact that the accused would not have made a statement "but for" the illegal arrest does not alone establish a causal link sufficient to require exclusion of the statement. Brown, 422 U.S. at 602-03, 95 S.Ct. *1186 2254. On the other hand, the fact that an accused may have been properly informed of his constitutional rights and waived them, while relevant, does not alone break the causal link. Taylor, 457 U.S. at 690, 102 S.Ct. 2664; Brown, 422 U.S. at 601, 603, 95 S.Ct. 2254 (holding Miranda warnings are not a "talisman"). Other factors in assessing the link between the illegal arrest and the statements are the existence of intervening circumstances, the "temporal proximity" of the arrest and the statements, and the "purpose and flagrancy of the official misconduct." Brown, 422 U.S. at 604, 95 S.Ct. 2254. See also Taylor, 457 U.S. at 690-91,102 S.Ct. 2664; Dunaway v. New York, 442 U.S. 200, 218-19, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
In the present case, there was no significant time lapse between the unlawful arrest and the statements in the back of the police car and at the police station, which were made shortly after the arrest. Moreover, there were no significant intervening circumstances. Finally, the improper actions of the police can fairly be characterized as "flagrant" because Officer Taylor admittedly seized defendant without a warrant for the sole purpose of questioning him about a murder based on information received more than five months earlier, without ever communicating the information to homicide authorities or attempting to contact defendant or to develop further information from other sources. Under these circumstances, which are similar to those of the Taylor, Brown and Dunaway cases, one cannot reasonably conclude that defendant's statements were "sufficiently an act of free will to purge the primary taint of the unlawful invasion." Wong Sun, 371 U.S. at 486, 83 S.Ct. 407. Defendant's alleged statements were inseparable from his unlawful arrest and should not have been admitted.[6]

Decree
Defendant's conviction and sentence are reversed, and the case is remanded to the district court for proceedings not inconsistent with this opinion.
NOTES
[*] Traylor, J., not on panel. Rule IV, Part 2, § 3.
[1] Officer Taylor testified that he left a message with an unknown person at the homicide division, but never heard from any officers.
[2] Officer Taylor described his prior relationship with defendant as "good friends," having asked defendant to act as a chaperone on a children's camping trip. Defendant testified without contradiction that Taylor knew where he, his brother and his mother lived.
[3] In the present case, it was not until trial that Office Taylor admitted he handcuffed defendant, which is a significant criterion of an arrest.
[4] This court has regarded the "reasonable cause" standard of Article 213 as the equivalent of the general federal constitutional standard of "probable cause." State v. Weinberg, 364 So.2d 964, 969 (La.1978). To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment.
[5] Officer Taylor's warrantless arrest of defendant had to be based on information strong enough that a neutral and detached magistrate could properly have issued a warrant for defendant's arrest. See State v. Jackson, 450 So.2d 621, 627 (La.1984)("A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause.") Indeed, the present case is an excellent example of a situation where the warrant process would have been beneficial. If a warrant had been sought, a neutral magistrate likely would have pointed out the need to develop probable cause, and any subsequent arrest would not have been based merely on a lone officer's delayed action on an unsubstantiated rumor.
[6] This case is unlike New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), where a statement made after an unlawful arrest in the suspect's home was suppressed, but a later statement made at the police station was admitted. In Harris, the statement in the home was suppressed because the police entered the home without consent, exigent circumstances or a warrant, in violation of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, the police did have probable cause to arrest or re-arrest the suspect so that he was not unlawfully in custody when he gave a statement at the station. His second statement was therefore admissible because it was not the product of the unlawful conduct, i.e., the arrest in the house. Harris, 495 U.S. at 18-20, 110 S.Ct. 1640. In the present case, neither statement was admissible because the police lacked probable cause to arrest defendant at any time or place.