786 So.2d 834 (2001)
STATE of Louisiana
v.
Rickey DAVIS a/k/a Henry Davis.
No. 00-KA-1753.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
*836 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Assistant D.A., Terry Boudreaux, Assistant D.A., James F. Scott, III, Assistant D.A., Vincent Paciera, Jr., Assistant D.A., Gretna, LA, for Plaintiff-Appellee.
Frank Sloan, Louisiana Appellate Project, Covington, LA, for Defendant-appellant.
*837 Panel composed of Judges DUFRESNE, GOTHARD and McMANUS.
DUFRESNE, Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Rickey Davis a/k/a Henry Davis,[1] and co-defendants, Terrell J. Perkins and Derrick Howard, with aggravated burglary, in violation of LSA-R.S. 14:60. The matter proceeded to trial before a twelve person jury, at the conclusion of which defendant[2] was found guilty as charged. As a result of this conviction, the trial judge sentenced defendant to thirty years at hard labor, to run consecutive with any other sentence being served.
The state subsequently filed a bill of information pursuant to LSA-R.S. 15:529.1 alleging defendant's status as a fourth felony offender. Following a hearing, the trial court found defendant to be a third felony offender, then vacated defendant's original sentence and sentenced him, pursuant to LSA-R.S. 15:529.1A(1)(b)(ii), to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Defendant now appeals. Defendant's appellate counsel filed a brief asserting as error the excessiveness of the sentence. In addition, defendant filed a pro se supplemental brief alleging several other errors. We have reviewed the assignments of error set forth by counsel and by defendant himself, and for the reasons which follow, we find no merit to their arguments.

FACTS
On April 30, 1997, at approximately 2:30 a.m., three armed men entered the River Ridge apartment of Joseph Redding and Ronald Smith. Two of the men, Henry Davis and Derrick Howard, ordered Redding to get out of bed and get dressed, while the third man, Terrell Perkins, searched the apartment. Howard also got Redding's roommate, Ronald Smith, out of bed, brought him to the front room, instructed him to lie down on the floor and held a gun on him. In the meantime, Davis and Perkins questioned Redding about the location of drugs and money. When the three intruders did not find what they were looking for, they directed Redding to bring them to "where the dope and money at." Hoping to escape once he was out of the apartment, Redding told the men that the drugs were in the trunk of his car. Perkins and Davis then took Redding and searched the trunk, but brought Redding back to his apartment when they did not find what they wanted. Redding then told the men that the drugs were in his neighbor's apartment.
Perkins and Davis accompanied Redding to the apartment of his neighbor, Patricia Berry. Redding knocked on Ms. Berry's door, telling her through the closed door that he needed to speak with her. When she opened the door slightly, the two men forced themselves into her apartment. When Redding asked Ms. Berry for drugs, she stated that she did not have any drugs and told the men to leave her apartment. Redding and Davis left Berry's apartment, but Perkins stayed behind. Davis brought Redding back upstairs to his apartment, where an argument ensued between the two men. Howard and Davis then took Redding and Smith downstairs at gunpoint and put them into Redding's car. Howard held the two men at gunpoint while Davis went to get his car. Redding escaped *838 from the car, went to a neighbor's house and called the police. When Davis realized Redding was gone, he told Howard to get Perkins from Berry's apartment. The three men left in Davis' car, but shortly thereafter, were apprehended by police. Redding and Smith were brought to the scene for a possible identification. Redding identified all three men but Smith was only able to identify Davis and Howard.
At trial, Mr. Redding testified that his girlfriend's stone ring, his Tommy Hilfiger watch, and his house and car keys were stolen from his apartment that night. The police recovered Mr. Redding's keys from the floorboard of Davis' vehicle.
Henry Davis, the only defendant to testify, told the jury that, in the early morning hours of April 30, 1997, he and his brother, Derrick Howard, and Terrell Perkins went to Redding's apartment to get Davis' money back for "bad drugs" that Redding had sold him earlier that day. Davis testified that they knocked on Redding's door and he let them into his apartment. He denied that he and his companions kicked in Redding's front door. Davis stated that none of them were armed with guns.

ASSIGNMENT OF ERROR NUMBER ONE
In the present case, defendant was found to be a third felony offender, with a crime of violence, and was sentenced to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension. LSA-R.S. 15:529.1 A(1)(b)(ii). He now argues that the imposition of a life sentence is constitutionally excessive under the circumstances of this case. He contends that he did not deserve a life sentence because his two prior felonies were mid-level thefts and his "habituation" to cocaine was "almost certainly the motivating factor in his criminal activity" and diminished "his culpability for his poor judgment and impaired impulse control." Finally, he maintains that the Louisiana Habitual Offender Statute was designed to protect non-criminal citizens. Since his "only crime of violence was directed at a person he reasonably believed to be a drug dealer," he contends that he should not be sentenced as a violent offender under the Habitual Offender Statute. We find no merit to these arguments.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
The Louisiana Supreme Court has repeatedly upheld the constitutionality of the Habitual Offender Law, and accordingly, the minimum sentences it imposes are likewise presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La. 1993).
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and *839 convincing evidence in the particular case before it which would rebut this presumption of constitutionality. In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare situations. State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339; State v. Johnson, supra; State v. Dorthey, supra.
In this case, defendant has made no showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment. We therefore see no error in the sentence imposed by the trial judge.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In his first pro se assignment of error, defendant alleges that the state violated his Sixth Amendment right to confront and cross-examine witnesses by withholding evidence of the deal of star witness, Joseph T. Redding. According to defendant, Redding was given a deal for probation in exchange for his trial testimony. Defendant now contends that he is entitled to a new trial because the state "intentionally deceived the defendant and the petit jurors by pretending that the witness, Joseph T. Redding was testifying freely and voluntarily, and that the witness wasn't given anything for his trial testimony." The record does not support defendant's argument.
According to the trial transcript, Joseph Redding, the state's witness, testified that he was currently incarcerated awaiting trial on theft and aggravated battery charges. He also admitted that he had a previous possession of cocaine conviction, for which he was on probation when he was arrested for aggravated battery. As a result of that arrest, his probation officer filed a rule to revoke probation, which was pending when he testified at trial. On direct examination, the assistant district attorney asked Joseph Redding, "Has the D.A.'s office made any kind of deal with you at all with respect to any of your charges or the probation revocation or the case, the theft case, that's pending or the aggravated battery arrest or anything else?" Redding responded, "No, they haven't."
Further, although it would have been an acceptable line of questioning on crossexamination, none of the three defense attorneys specifically inquired whether a deal between the witness and the state existed during their cross-examination of Redding about his arrest and prior convictions. Only co-defendant Terrell Perkins' attorney specifically asked, "Mr. Redding, do you feel that there would be any negative repercussions on your part from the district attorney's office if you had chosen not to testify here today?" In response, the witness stated, "I'm testifying here on my own free will. Suppose my son was in that house."
In the present case, we recognize that defendant attached two affidavits to his supplemental brief to support his theory that the state made a deal with Redding in exchange for his trial testimony. However, as shown by the foregoing discussion, there is no evidence in the record that the witness testified as part of a deal with the state. Accordingly, we find no merit to this assigned error.

*840 PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that his right to confrontation was violated because the "state prosecutors and trial judge refused to allow the defendants to cross-examine state witnesses Ronald Smith and Patricia Berry concerning illegal drug activities of State witness, Joseph T. Redding."
With regard to the cross-examination of Ms. Berry, it is noted that only one defense attorney questioned her at trial. On cross-examination, he did not ask, or even attempt to ask Berry whether the victim, Joseph Redding, was involved in illegal drug activity. Therefore, defendant's argument that he was not allowed to properly cross-examine Ms. Berry is unsupported by the record and, as such, is without merit.
As for Ronald Smith, defendant alleges that he was not allowed to cross-examine him about Redding's illegal drug activities and was therefore unable to expose to the jury this witness's bias and self-interest. Defendant contends that, when the trial judge did not allow him to cross-examine Smith on drug related matters, "it made the defendants look like liars and destroyed the defendants [sic] credibility."
In State v. Fisher, 96-0004 (La.App. 4 Cir. 4/2/97), 692 So.2d 713, 720,[3] the Fourth Circuit stated:
A criminal defendant's right to crossexamination is a fundamental right guaranteed by the Sixth Amendment of the United States Constitution applicable to the states through the Fourteenth Amendment. The right is further guaranteed by the Louisiana Constitution and the Louisiana Code of Evidence. The right to cross-examine a witness includes the right to question the witness concerning any bias or self-interest attached to the witness's testimony. However, the right to confrontation is not so unlimited as to require permitting a defendant on cross-examination of state witnesses to make any and all inquiries of whatever character. The inquiry must be relevant. (Emphasis added). (Citations omitted).
Relevant evidence is defined in LSA-C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence in a criminal case is that which tends to show commission of the offense charged, and intent, or tending to negate commission and intent. State v. Miles, 402 So.2d 644 (La.1981); State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004.
At trial judge's determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. Moreover, the scope and extent of cross-examination rests largely within the discretion of the trial judge and his rulings will not be disturbed in the absence of an abuse of discretion. State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235.
In his supplemental brief, defendant argues that his confrontation rights were violated because he was not allowed to cross-examine Smith about Redding's drug trafficking. He does not, however, address the trial court's ruling that the testimony that he sought to elicit was irrelevant to the case at hand. In this case, defendant was hoping to shift blame from himself by portraying the victim as a drug dealer. The possibility that the victim was *841 a drug dealer, however, does not negate intent or commission of the crime that defendant was charged with and, therefore, was not relevant at trial.
Based on the foregoing, we find that this assigned error is likewise without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In his third alleged error, defendant argues that the state improperly withheld impeachment evidence from the defense. Defendant alleges that the state made a deal with Joseph Redding to testify against him and the other co-defendants at trial in exchange for favorable treatment on a pending charge and that the state failed to disclose that deal to the defense.
The Fourth Circuit dealt with this issue in State v. Meyers, 97-2584 (La.App. 4 Cir. 11/24/99), 748 So.2d 554, 562:
The State must disclose to the defense evidence that is favorable to the defense and is material to guilt or punishment. Included in this rule is evidence that impeaches the testimony of a witness whose reliability or credibility may determine guilt or innocence. Although the prosecutor is not required to deliver his entire file to defense counsel, he must disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.
Under LSA-C.E. art. 607, a witness' credibility may be challenged by the introduction of extrinsic evidence of bias or interest. This includes evidence of the existence of a deal or agreement with the State in which the witness receives any benefit or gain in exchange for his testimony. But before such evidence is admissible, the court must find that an agreement or deal was made. (citations omitted).
In his supplemental brief, defendant supports his claim with a copy of the case review that indicates that, on the day after he testified against them, Redding pled guilty to theft, received a suspended sentence, and was placed on probation. Further, defendant presents an affidavit from his mother in which she claims that she overheard an assistant district attorney make a deal with Redding that he would receive probation in exchange for his testimony. Finally, defendant presents an affidavit from a cellmate of Redding's alleging that Redding stated that he had a deal with the state and he also coerced two witnesses into lying for him.
At trial, however, the assistant district attorney asked Redding on direct examination whether anyone from the district attorney's office had made a deal with him in exchange for his testimony and Redding indicated that no deal was made. Further, each of the three defense attorneys had an opportunity to cross-examine him about any favorable treatment that he may receive in exchange for his testimony but their questioning did not produce any evidence of a deal.
Here, the case review attached to defendant's supplemental brief does suggest that the witness pled guilty to theft and was placed on probation the day after the three defendants were convicted but that alone is not objective proof that the witness had a deal with the state. As noted previously, the witness expressly denied that he had a deal with the state. Further, the defendant was not prevented from cross-examining him about any alleged deal at trial. In fact, he did not have to ask on cross-examination because the state asked the witness about any deals on direct examination. Therefore, in light of the fact that the record does not contain evidence of a deal, we find that there was nothing for the state to disclose to defendant. *842 This assigned error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
Defendant argues, in his fourth pro se assignment of error, that his conviction should be reversed because the state relied on Joseph Redding's perjured testimony to obtain the conviction. They contend that Redding lied by testifying that he had not received a deal, did not expect a deal, and was testifying of his own free will.
In State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, the defendant similarly contended that a witness should not have been allowed to testify at trial, because the state and the court allegedly knew that the witness was going to perjure himself. The Broadway court reasoned:
This contention implicates the decision in Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). To prove a Napue claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. When a prosecutor allows a state witness to give false testimony without correction, a conviction gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Furthermore, fundamental fairness to an accused, i.e., due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
Id. at 814.
In Broadway, the Supreme Court denied the defendant=s claim as "wholly unsubstantiated," because "he failed to provide any evidence in support of his allegation and merely relies on his bare assertion." The Supreme Court relegated his claim to post conviction relief, if he could substantiate his assertion.
In this case, defendant similarly relies on a bare assertion that Redding lied on the witness stand. He contends that the minute entry that Redding received probation after pleading guilty to theft proves that Redding lied on the witness stand. Again, the record does not support his claim because the assistant district attorney, on direct examination, elicited testimony from Redding that no one from the district attorney=s office had made a deal with him.
Based on the foregoing, we find no merit to this claim as presented; however, following the Supreme Court=s reasoning in Broadway, we relegate this claim, if defendant can substantiate it, to post conviction relief.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE
In his fifth argument, defendant alleges that he did not receive a fair trial because the trial judge had a personal interest in the outcome of the case. Specifically, defendant alleges that the judge made a secret plea bargain deal with Joseph Redding and afforded Redding "special judicial treatment." Further, defendant contends that the trial judge made biased rulings that prevented him from cross-examining state witnesses.
*843 First, it is noted that defendant failed to move for recusal of the trial judge. Thus, this alleged error is waived. LSA-C.Cr.P. arts. 671 and 674; State v. Williams, 580 So.2d 448 (La.App. 5 Cir.1991), writ denied, 613 So.2d 992 (La.1993); State v. Kendrick, 96-1636 (La.App. 3 Cir. 6/25/97), 699 So.2d 424, writ denied, 98-2159 (La.12/18/98), 731 So.2d 280.
Furthermore, a trial judge is presumed to be impartial. State v. Edwards, 420 So.2d 663 (La.1982). In order to obtain a recusation based on bias, prejudice, and personal interest, the party seeking the recusation must establish more than conclusory allegations. State v. Boudreaux, 95-153 (La.App. 5 Cir. 9/20/95), 662 So.2d 22, writ denied, 96-0840 (La.5/30/97), 694 So.2d 233.
In this case, there is no support in the record for defendant's claim that the trial judge had a "secret deal" with the witness nor does the record reflect that the witness received "special judicial treatment." Finally, defendant's contention that the trial judge hindered his cross-examination of the state witnesses is without merit as shown by the discussion set forth in pro se assignments of error numbers one and two. Having concluded that the record does not reflect any bias or prejudice on the trial judge's part, we find this assigned error to be without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER SIX
In his final assigned error, defendant contends that his trial was a "mockery of justice" and that he is entitled to a new trial. Specifically, he contends again that the fact that the prosecutors and the trial court "hid a secret plea bargain deal" with Joseph Redding prejudiced him. He also again alleges that the state prosecutors and the trial judge prevented him from properly cross-examining state witnesses to expose their bias and self-interest.
In this assignment, defendant basically contends that he was denied his right to a fair trial based on the arguments set forth in the first five assignments of error. Having found defendant's previous claims to be without merit, we likewise conclude that this sixth assignment of error lacks merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent and have found none. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975). For the reasons assigned herein, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] At trial, defendant testified that his given name is Henry Davis.
[2] Although the three co-defendants were tried together, this appeal relates solely to Henry Davis.
[3] Reversed on other grounds, 97-1133(La.9/9/98), 720 So.2d 1179.