866 So.2d 408 (2004)
STATE of Louisiana
v.
Frank W. KANG.
No. 01-KA-1262.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 2004.
Rehearing Denied March 15, 2004.
*411 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Thomas J. Butler, Terry M. Boudreaux, Richard R. Pickens, II, Assistant District Attorneys, Gretna, LA, for Appellee.
Robert Glass, New Orleans, LA, for Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
In our previous decision in this case, State v. Kang,[1] we found that the trial court had erred in refusing to strike a prospective juror for cause and reversed defendant's conviction. Thereafter, the supreme court reversed our finding and remanded for this court to consider the defendant's remaining assignment of error. For the following reasons, defendant's conviction is affirmed.
Defendant, Frank Kang, argues that the trial court erred in refusing to grant his motion to suppress his two statements on the basis they were the product of an illegal arrest made without probable cause. He first challenges the initial detention of the vehicle in which he was riding. Kang contends the detention should have ended when the police realized that the car they stopped was a black Honda and not a black Lexus for which they were looking. Kang further challenges his arrest, which he contends occurred after the initial investigatory stop when he was handcuffed and *412 transported to the Detective Bureau, arguing that his mere presence in a car with a named suspect does not create probable cause to arrest him. As such, Kang asserts his arrest was invalid and the two statements he gave following his arrest were suppressible as fruit of the poisonous tree.
A trial court's ruling on a motion to suppress a confession is entitled to deference.[2] In reviewing the trial court's ruling, the evidence presented at trial may be considered in addition to the evidence presented at the hearing on the motion to suppress.[3]
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from the trial.[4] There are three tiers of interaction between the police and citizens as it relates to the Fourth Amendment. The first tier is mere communication between offices and citizens where there is no coercion or detention. Such communication does not implicate the Fourth Amendment. The second tier is the investigatory stop where the police may briefly seize a person if the officer has reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. And, the third tier is a custodial arrest where the police must have probable cause to believe that the person has committed a crime.[5]
The first issue in determining the admissibility of Kang's two statements is whether the initial stop of the vehicle in which defendant was riding was justified. The initial stop of the vehicle falls under the second tier of interaction, or an investigatory stop. Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.[6]
The officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity" and must be able to articulate the specific facts upon which his suspicion is based.[7] The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person.[8]
At the hearing on the motion to suppress, Detective Randy Thibodeaux testified he was patrolling an area on the Westbank encompassing Manhattan Boulevard *413 on the night of March 4, 2000 when he heard a broadcast referencing a shooting in Metairie. The broadcast indicated the vehicle involved was a black Lexus with three Asian males from the Westbank. He later learned through further radio communication that one of the perpetrators was James Oh and that he lived on Lake Michelle in the Stonebridge area.
After ascertaining that enough time had passed to allow James Oh to make it back to Stonebridge from the scene of the shooting, Detective Thibodeaux went looking for the vehicle in the Stonebridge area. He was stopped at the intersection of Harvey and Wall when a vehicle fitting the description of the black Lexus turned in front of him. The window was rolled down and Detective Thibodeaux saw two Asian males inside the car. Detective Thibodeaux looked in his rearview mirror and believed the car was a Lexus. He then turned around and stopped the vehicle.
As Detective Thibodeaux approached the vehicle, he discovered it was a black Honda as opposed to a black Lexus. He nonetheless proceeded to ask the occupants for their names and identification. Detective Thibodeaux explained that he continued with his investigation into the car's occupants for several reasons. He stated it was early in the morning, the vehicle was coming out of Stonebridge in the same area as Lake Michelle and it contained Asian males. Detective Thibodeaux worked paid details in Stonebridge and stated it was unusual to see Asian males out in Stonebridge at that time of morning. He further stated, based on his experience, that people are not always accurate in describing vehicles. Since he initially believed the vehicle he stopped was a Lexus, he stated it was very possible that a witness could have confused the make of the car involved. Since he did not have a license plate number, he could not verify if the vehicle they were looking for was in fact a Lexus. Finally, Detective Thibodeaux explained it was possible the perpetrators switched cars.
We find that the following facts provide reasonable suspicion to support an investigatory stop: Detective Thibodeaux, while on patrol, heard the radio dispatch that a black Lexus with three Asian males from the Westbank was being sought in connection with a shooting on the Eastbank in Metairie. Through further radio communication with Lieutenant Walsdorf, who was on the scene of the shooting in Metairie, Detective Thibodeaux learned one of the suspects in the black Lexus was James Oh who lived on Lake Michelle in the Stonebridge subdivision. Approximately 30 minutes after the shooting, a reasonable time lapse in which the vehicle being sought could have driven from the Eastbank to the Westbank, Detective Thibodeaux stopped a black vehicle with Asian male occupants coming out of the Stonebridge subdivision near the area of Lake Michelle. We find that although the vehicle was a Honda as opposed to a Lexus, the officer's training and experience, as discussed above, justified a continuation of the investigatory stop.
Having found the initial stop of the vehicle in which defendant was riding to be a valid investigatory stop based on reasonable suspicion, the next inquiry is at what point defendant was arrested and whether probable cause to arrest existed at that time.
After stopping the vehicle, Detective Thibodeaux asked for identification from all four occupants. The only occupant who could provide identification was James Oh, the named suspect. Thereafter, each of the four occupants was transported separately to the Detective Bureau. The record shows that Kang was handcuffed and placed in the back of a marked police unit *414 before being transported to the Detective Bureau. Lieutenant Steve Buras testified that Kang was not arrested at that time nor when he arrived at the Detective Bureau. However, Lt. Buras stated that Kang was not free to leave the Detective Bureau.
The Louisiana Supreme Court has discussed an arrest as follows:
An arrest is "the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him." La.Code Crim. Proc. art. 201. Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue.
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty.[9]
In the present case, the police restrained Kang by handcuffing him and putting him in the back seat of a police car bound for the Detective Bureau. The jurisprudence makes it clear that an arrest occurred at that time. In State v. Fisher, supra, the defendant was likewise handcuffed and placed in a police unit bound for the police station. The supreme court determined that no reasonable person in the same position could have believed he was free to go. The supreme court also noted that the police officer's testimony that he intended to take Kang to the police station indicated "an unmistakable intent to impose a restriction on defendant's liberty more extensive than an investigatory stop."[10]
Having found defendant was arrested at the scene of the investigatory stop, the next issue is whether there was probable cause to arrest him at that time.
Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or is committing a crime.[11] A police officer need not be able to negate all possible lawful explanation of a situation before making an arrest but must have within his knowledge information upon which to reasonably base a belief that the person to be arrested is criminally connected with the circumstances.[12]
The determination of the existence of probable cause must be judged by the probabilities and practical considerations *415 of everyday life on which average police officers can be expected to act.[13] Probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction.[14] When a defendant seeks suppression of a confession obtained through an arrest allegedly made without probable cause, the State bears the burden of proving probable cause.[15]
The determination of probable cause is very fact specific. In State v. Fisher, supra, the Louisiana Supreme Court found there was no probable cause to arrest defendant based on neighborhood gossip. In particular, one of the police officers investigating a murder was told by unnamed people in the neighborhood who did not see the shooting that defendant had shot the victim. The police officer did not share this information with anyone else in the homicide division nor did he attempt to question the defendant on his own. The court concluded he made no effort to follow up the lead he received. Five months later, the police officer saw the defendant riding in a car. He hollered to the defendant that he wanted to talk to him. The defendant yelled back to the officer that he would call him. The officer followed the car for several blocks and then stopped the car with flashing lights. There was no traffic violation and the only reason the police stopped the car was to question defendant about the murder. The officer removed defendant from the car, handcuffed him, placed him in the back seat of the police car and drove him to the police station. The court determined the neighborhood gossip did not constitute probable cause.[16]
However, in State v. Fauria,[17] the Louisiana Supreme Court determined there was probable cause to arrest three defendants, who were cutting cable wires, for theft. In Fauria, a police officer observed three defendants near a spool of cable lying on the ground. The men had a cable cutter and were transferring cut pieces of cable into the rear of a pickup truck. The officer recalled a theft complaint of copper cable made earlier by the Harbor Police. The officer held the three men until the Harbor Police arrived. When the Harbor Police officer arrived, he indicated the wire and spool were "similar" to the type of wire and spool that had been stolen from the wharves several days earlier. One of the defendants stated he chased somebody down and picked the wire up. The three defendants were placed under arrest and charged with theft and receiving stolen goods.
The supreme court determined there was probable cause to arrest the defendants based on the facts the copper cable in the defendants' possession was the type taken from the wharves and the defendants' response to the officer's interrogation was unsatisfactory. The court concluded the facts and circumstances within the officer's knowledge were sufficient to justify a man of average caution in the belief that the defendants had committed an offense. The court noted that "[c]onsidering the circumstances and the unlikely *416 story told by the defendants, it was more probable than not that the defendants' activity consisted of criminal behavior."[18]
In the present case, Kang argues that, at the time of his arrest, the police had no evidence he had any connection to the shooting, that he was ever in the "Lexus" at issue or that he was even at the scene of the shooting. He contends his mere presence in the car with a named suspect did not justify his arrest. However, considering the totality of the circumstances, we find that the police had probable cause to arrest Kang.
Specifically, the police knew a shooting had occurred in Metairie at approximately 3:45 a.m., three Asian males in a black Lexus were involved in the shooting, the perpetrators were from the Westbank, and one of the perpetrators was James Oh who lived on Lake Michelle in the Stonebridge subdivision. At approximately 4:35 a.m., the police stopped a black Honda, which is similar in characteristic to a Lexus, with four Asian males occupants in an area near the Stonebridge subdivision where Lake Michelle is located. After asking the occupants for identification, they learned James Oh was in the car.
Once the police learned James Oh was one of the occupants, the reasonable suspicion, which had justified the investigatory stop, ripened into probable cause. Since the police knew more than one perpetrator was involved in the shooting, they had probable cause to suspect all the occupants in the vehicle had just committed an offense. The totality of circumstances including 1) the time of morning, 2) the time period between the shooting and the stop, 3) the location of the stop near the area where one of the perpetrators was known to live, 4) the similarity between the car the men were in and the car the police were looking for, 5) the fact all occupants inside the car being Asian male matched the description of the perpetrators, and 6) the presence of the named perpetrator inside the vehicle, made it more probable than not that the occupants had been involved in criminal activity.
Since the police had probable cause to arrest Kang, his arrest was lawful. As such, we find that the trial court did not err in denying his motion to suppress his statements as products of an illegal arrest.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[19] and State v. Weiland.[20] The review reveals one error patent in this case.
In accordance with the statute, the trial court sentenced Kang to life imprisonment without the benefit of parole, probation or suspension of sentence. However, the commitment only shows the sentence is to be served without the benefit of probation and suspension of sentence. Thus, the commitment fails to indicate defendant's sentence is without the benefit of parole. Where there is a discrepancy between the transcript and the minute entry, the transcript prevails.[21] We therefore order the trial court to correct defendant's commitment to reflect that his sentence is to be served without the benefit of parole as indicated by the sentencing transcript.
In all other respects, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] 01-1262 (La.App. 5 Cir 10/29/02), 831 So.2d 409.
[2] State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1182
[3] Id.
[4] State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989.
[5] State v. Fisher, 720 So.2d at 1183 (internal citations omitted).
[6] State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
[7] State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050, quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citation omitted).
[8] State v. Huntley, 708 So.2d at 1049.
[9] State v. Fisher, 720 So.2d at 1183 (internal citations omitted).
[10] State v. Fisher, 720 So.2d at 1183. See also, State v. Kenner, 384 So.2d 413, 417 (La.1980), where the court held defendant was arrested when he was detained and placed in the police car in handcuffs even though he was not formally arrested until after he was identified by the victims.
[11] State v. Fisher, 720 So.2d at 1184; State v. Harris, 00-1930 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 803.
[12] State v. Phillips, 347 So.2d 206, 209 (La. 1977).
[13] State v. Fisher, 720 So.2d at 1184; State v. Harris, 786 So.2d at 803.
[14] State v. Simms, 571 So.2d 145, 148-149 (La.1990).
[15] State v. Fisher, 720 So.2d at 1184.
[16] The court also rejected the State's contention that defendant fled from the police which may have provided probable cause in the totality of the circumstances. The court noted that there was no evidence of flight to avoid apprehension. State v. Fisher, 720 So.2d at 1185.
[17] 393 So.2d 688 (La.1981).
[18] State v. Fauria, 393 So.2d at 690.
[19] 312 So.2d 337 (La.1975).
[20] 556 So.2d 175 (La.App. 5 Cir.1990).
[21] State v. Lynch, 441 So.2d 732, 734 (La. 1983).