| STATE OF LOUISIANA | * | NO. 2021-K-0738 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| THOMAS RILES | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 549-941, SECTION "J"
Honorable Darryl A. Derbigny, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*
(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)

**LOMBARD, J., DISSENTS WITH REASONS.**

Jason R. Williams
DISTRICT ATTORNEY FOR ORLEANS PARISH
G. Ben Cohen
Chief of Appeals
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR STATE OF LOUISIANA/RELATOR

Diana Yu
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70119

      COUNSEL FOR DEFENDANT/RESPONDENT

             **WRIT GRANTED;**
             **JUDGMENT REVERSED**
             **MARCH 30, 2022**

*JCL*

*RML*

Relator, the State of Louisiana, seeks review of the district court's November 10, 2021 ruling, wherein the district court granted the motion to suppress the evidence and statement filed by Thomas Riles ("Defendant") and found no probable cause. For the reasons discussed below, we grant the writ and reverse the district court's ruling.

At the hearing on Defendant's motion to suppress, the State offered the testimony of Officer David DeSalvo, which the video footage from his body camera corroborated. Before the arrest, Officer DeSalvo and his superior officer were driving a marked police vehicle down Saint Mary Street to get lunch, with several other officers following in police vehicles.[1] Defendant was walking on the adjacent sidewalk in the same direction as the officers. When Defendant noticed the police approaching him from behind, Defendant immediately turned around, walking toward the approaching police before turning down a driveway on the side of a residence he had just passed. Down the driveway, Defendant approached a door and feigned a knocking motion on the door. Officer DeSalvo stopped to

---

[1] Officer DeSalvo testified that at least six other officers followed in police units.

1

watch Defendant, at which point Defendant made "the lightest knock possible" on the door, such that "no one would have heard it." Officer DeSalvo noted this behavior was odd and also noticed a bulge in Defendant's waistband, which he believed was a firearm.[2] Defendant then stepped over the railing of the porch where he stood and walked toward a fence at the rear of the residence as if he was preparing to jump the fence into the backyard.

Officer DeSalvo did not believe Defendant "belonged at that address" and elected to make a suspicious person stop. Officer DeSalvo requested the other officers to assist with the stop. Officer DeSalvo drove around the corner to the rear of the residence while the other officers followed Defendant from the front of the residence as Defendant jumped over the fence. One of the assisting officers reported seeing Defendant discard an object as he fled from the police.

Officer DeSalvo found Defendant behind an adjacent residence lying on the ground next to a fence doing pushups, at which point he placed Defendant in handcuffs and immediately read him his *Miranda* rights. A handgun was found on the ground in the area where it had been reported Defendant discarded an object.

The district court's findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed *de novo. State v. Polkey*, 20-0482, pp. 3-4 (La. App. 4 Cir. 11/25/20), 310 So.3d 605, 608 (citing *State v. Pham,* 01-2199, p. 3 (La. App. 4 Cir. 1/22/03), 839 So.2d 214, 218; *U.S. v. Seals,* 987 F.2d 1102, 1106

---

[2] Officer DeSalvo testified he had eleven years of experience dealing with concealed weapons, and had been involved in over one hundred cases involving concealed weapons.

(5th Cir. 1993)). Accordingly, on mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions drawn from those facts *de novo*. *Polkey*, 20-0482, p. 4, 310 So.3d at 608 (citing *Pham,* 01-2199, p. 3, 839 So.2d at 218). Where the facts are not in dispute, the reviewing court must consider whether the district court came to the proper legal determination under the undisputed facts. *Id.* The parties in this case do not dispute the facts and the video footage from the officer's body camera corroborated the testimony; thus, we must review *de novo* whether the officers had a reasonable, particularized, and objective basis to suspect criminal activity. *See State v. Morgan*, 09-2352, p. 5 (La. 3/15/11), 59 So.3d 403, 406.

In *State v. Fisher*, 97-1133 (La. 9/9/98), 720 So.2d 1179, the Louisiana Supreme Court recognized a useful three-tiered analysis of interactions between citizens and the police, which the court reiterated in *State v. Hamilton*, 09-2005 (La. 5/11/10), 36 So.3d 209, as follows:

> In the first tier, there is no seizure or Fourth Amendment concern during mere communication with police officers and citizens where there is no coercion or detention. *State v. Fisher*, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183. The second tier consists of brief seizures of a person, under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal activity. *Fisher*, 720 So.2d at 1183. The third tier is custodial arrest where an officer needs probable cause to believe that the person has committed a crime. *Id.*
>
> Within the first tier, officers have "the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." *Dobard,* 824 So.2d at 1130 (quoting *State v. Johnson*, 01-2436, p. 3 (La. 1/25/02), 806 So.2d 647, 648). Further, the police do not need probable cause to arrest or reasonable suspicion to detain an individual each time they approach a citizen. *Dobard*, 824

3

So.2d at 1130. As long as the person approached by the officers remains free to disregard the encounter and walk away, there are no constitutional implications. *Id.* In *State v. Dobard,* this court stated, "It is settled that 'law enforcement officers' do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen ...." 01-2629, p. 8 (La.6/21/02), 824 So.2d 1127, 1132 (quoting *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)).

*Hamilton*, 09-2005, p. 4, 36 So.3d at 212-13.

We find that the investigatory stop of Defendant was lawful. "[C]ourts reviewing the legality of an investigatory stop must consider the totality of the circumstances of each case to see whether the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Morgan,* 09-2352, p. 5 (La. 3/15/11), 59 So.3d 403, 406 (citations omitted).

Our court and the Supreme Court have found reasonable suspicion sufficient to justify an investigatory stop in cases presenting similar suspicious and unprovoked flight behavior to those presented in the case *sub judice. See e.g. State v. Frosch,* 816 So.2d 269, 270 (La. 3/22/02) (the defendant looked into a truck and jiggled the door handle and attempted to flee upon noticing police in a neighborhood having many vehicle thefts in the past[3]); *State v. Devore,* 00-0201

---

[3] We find it immaterial in our reasonable suspicion analysis in the case *sub judice* as to whether the area of the arrest was a high-crime neighborhood or whether New Orleans is a high-crime city. Defendant's odd and evasive flight behavior at the sight of the police coupled with the reasonable suspicion that Defendant was carrying a concealed firearm was sufficient for a finding that the investigatory stop did not infringe on Defendant's Fourth Amendment constitutional right, which protects people from unreasonable searches and seizures by the government. Moreover, Defendant's flight onto private property under the circumstances was a crucial factor in our reasonable suspicion analysis. Our totality of the circumstances balancing analysis is based on all available information rather than bright-line rules. This analytical framework allows courts to be free to consider a range of evidence when making Fourth Amendment reasonableness determinations. In *Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050, 1055, 185 L.Ed.2d 61 (2013), the United States Supreme Court affirmed that judges must

4

(La. App. 4 Cir. 12/13/00), 776 So.2d 597 (the defendant concealed himself in a vehicle upon seeing police officers); *State v. Keller*, 98-0502 (La. App. 4 Cir. 3/10/99), 732 So.2d 77 (the defendant hastily walked away from police officers and removed a white object from his pants pocket and shoved the object into his mouth while walking away). *See also State v. Moultrie*, 14-1535 (La. App. 1 Cir. 10/23/15), 182 So.3d 1017, *rev'd on other grounds*, 15-2144 (La. 6/29/17), 224 So.3d 349.[4]

The totality of the circumstances—Defendant's odd and evasive behavior, the visible bulge in Defendant's waistband, and Defendant's unprovoked flight[5] over a fence and into the backyard of a private residence he could not access— gave the police a reasonable basis to stop Defendant. Consequently, we find that evidence obtained in the ensuing investigation—the gun discovered near the site of Defendant's arrest and statements made to police after Defendant was arrested and read his *Miranda* rights—was obtained lawfully. Likewise, we find probable cause for Defendant's arrest.

In light of the foregoing facts and law, we find the district court erred in granting the motion to suppress and finding no probable cause for Defendant's

---

"reject[] rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach."

[4] The Supreme Court reversed the appellate court's ruling that the search of a barbecue grill exceeded the permissible scope of a protective search for weapons but did not disturb the appellate court's ruling that the officers had reasonable suspicion to stop and detain the defendant. The defendant quickly walked away upon recognizing police officers in a high-crime area. When the officers, just seconds later, arrived at the driveway where the defendant had disappeared, the defendant reappeared, walking back toward them.

[5] In *Morgan*, the Louisiana Supreme Court observed that, "although flight, alone, is insufficient to support a finding of reasonable suspicion, . . . a defendant's flight, especially when unprovoked, appears to be the crucial factor in the reasonable suspicion analysis." 09-2352, p. 9, 59 So.3d at 408-09.

arrest. Accordingly, we grant the State's writ application and reverse the district court's November 10, 2021 judgment.

**WRIT GRANTED; JUDGMENT REVERSED.**