CLARENCE E. McMANUS, Judge.
| ^Defendant, Demetrius T. Taylor, appeals his conviction of possession of a firearm by a previously convicted felon. For the reasons which follow, we affirm the defendant’s conviction and sentence.

STATEMENT OF THE CASE

On July 23, 2008, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Demetrius T. Taylor, with possession of a firearm after having been previously convicted of a felony, in violation of LSA-R.S. 14:95.1. A sanity motion was filed, and defendant was ruled competent to stand trial on October 1, 2008. Subsequent to finding defendant competent, defendant was arraigned and entered a plea of not guilty. Several pretrial motions, including a motion to suppress evidence and statement, were filed by defendant and denied on April 27, 2009, by the trial court.
On October 15, 2009, trial of this matter commenced. During the trial, and outside the presence of the jury, the defendant moved for a mistrial on the grounds that defendant was incompetent to stand trial. The trial court granted defendant’s motion for mistrial, at which time defense counsel waived any potential double jeopardy issues. Thereafter, a competency hearing was held on January 27, 2010, Land after examination of the expert report, the trial court found defendant incompetent.
Several months later, on April 28, 2010, defendant’s competency was re-evaluated and defendant was found competent to stand trial. On August 12, 2010, defendant withdrew his not guilty plea and entered a plea of “not guilty and not guilty by reason of insanity.” On the morning of trial, defendant withdrew his not guilty by reason of insanity plea. The matter proceeded to trial before a 12-person jury on June 21, 2011.
Sergeant Kevin Cannatella, of the Louisiana State Police, testified that on June 28, 2008, he received information that a vehicle was traveling the wrong way down Interstate 10 (“1-10”). Pursuant to this information, Cannatella testified that he identified the vehicle and conducted a traffic stop. Because the vehicles were facing each other when the stop was conducted, Cannatella testified that he observed the defendant lean forward and move something on the floorboard in front of him. The defendant was ordered to exit his vehicle and was approached by Cannatella who asked him for identification. The defendant informed Cannatella that his state identification card was inside the vehicle. Cannatella testified that he accompanied the defendant back to his vehicle to retrieve the identification and upon opening *527 the driver’s side door, Cannatella observed, on the floorboard in plain view, a chrome revolver. At that point other police troopers had arrived on the scene, so Cannatella escorted the defendant to the troopers who ordered defendant to place his hands on the hood of the car while Cannatella secured the weapon. Cannatel-la further testified that the defendant was advised of his Miranda rights, but could not specifically recall which officer had Mirandized the defendant. Cannatella testified that the rights would have been read from a card used by the State Police. Cannatella also testified that the defendant understood |4his rights and indicated that he was willing to speak with the officers. The defendant then told the officers that he knew the gun was inside his vehicle and that the gun belonged to a family member. However, defendant could not provide the name of the family member who owned the gun. The defendant’s identification card was also retrieved from the vehicle and a criminal background check was performed. Pursuant to the background check, Canna-tella testified that the defendant was placed under arrest.
Trooper Justin Berry, also of the Louisiana State Police, testified that when he arrived on the scene, there were three other officers present and that the defendant was standing outside of his vehicle with his hands on the hood of his car. Berry further testified that while Canna-tella secured the gun, he asked the defendant about the gun. The defendant advised Berry that it belonged to his cousin but was unable to provide his cousin’s name. Berry also testified that he did not read the defendant his Miranda rights, and did not indicate in his report that the defendant’s rights had been read. According to Berry, he was under the impression that the defendant’s rights had been read prior to his arrival.
After considering the evidence presented, the jury found defendant guilty as charged. On August 29, 2011, the trial court sentenced defendant to ten years imprisonment, with credit for time served. The trial court also ordered defendant’s sentence to run concurrently “with any other sentence and with any parole revocation.” On the same date, defendant filed a motion for appeal which was granted by the trial court on August 30, 2011.

ASSIGNMENT OF ERROR NUMBER ONE

On appeal, the defendant argues that the trial court erred in denying his motion to suppress because his statement was made pursuant to a custodial interrogation and prior to receiving his Miranda rights. Defendant further | .^contends that the evidence acquired as a result of the illegality, namely, the gun, should have also been suppressed. Specifically, defendant asserts that when he was handcuffed and questioned about the gun, an illegal war-rantless arrest and search occurred. And because the illegal procedure tainted the physical evidence that was gathered, as well as the statement obtained, defendant argues that his motion to suppress should have been granted.
In response, the State first submits that the gun, recovered from the driver’s side floorboard, was seized after it was observed in plain view and prior to the defendant’s statement. Thus, the State maintains that the gun was not obtained as a result of any alleged illegality which had yet to occur. Second, the State argues that defendant’s statement was made after he was advised of his Miranda rights by one of the troopers on the scene, as testified to by Cannatella. Additionally, the State contends that Trooper Berry testified that the defendant provided the subject statement prior to being placed under *528 arrest and while the troopers were still investigating a potential traffic stop. Thus, because the defendant was not “in custody3’ at the time the statement was made, the State argues that Miranda was not implicated.
At the motion to suppress hearing, Sergeant Cannatella’s testimony differed from his testimony at trial with respect to the timeline of events in this case. At the suppi'ession hearing, Cannatella testified that on June 28, 2008, he received a call that a green SUV was traveling the wrong way down 1-10. Cannatella observed the vehicle described, activated his overhead lights, and conducted a traffic stop. Upon conducting the stop, the driver was asked to exit the vehicle at which time Cannatella observed him leaning over, appearing to place something underneath his seat. Once the driver had exited the vehicle, Cannatella approached him and asked him to identify himself, however, the defendant was unable to provide | ^identification. The defendant advised Cannatella that the vehicle did not belong to him, and made several attempts to return to his vehicle but Cannatella prohibited him from doing so until a safety check was performed. Upon opening the driver’s side door, Can-natella observed part of a chrome revolver on the floorboard. Cannatella took control of the revolver at which time a second trooper arrived on the scene. Cannatella instructed the trooper to place defendant in handcuffs for safety because of the weapon recovered. Cannatella further testified that he heard Trooper Flynn read defendant his Miranda rights. Cannatella testified that they ran the serial number on the revolver and discovered that it had been “taken in an armed robbery and reported stolen out of Texas.” Cannatella testified that upon learning this information, the investigation changed from one for safety to placing defendant under arrest for possession of a stolen weapon, for which defendant was re-Mirandized. Can-natella then testified that after being Mir-andized for a second time, he heard the defendant state that he knew the weapon was in the vehicle, and that the weapon belonged to his cousin.
At the conclusion of the hearing, and after argument of defense counsel that the defendant’s statement should be suppressed because the State failed to produce the trooper who read defendant his Miranda rights, the trial court held the matter open so Trooper Flynn could testify-
Many months later, and after submitting post-hearing memoranda, on April 27, 2009, defendant moved the trial court to render a ruling on his motion to suppress. Thus, at the second hearing on defendant’s motion to suppress, the State argued that upon conducting a safety check of the defendant’s vehicle, a gun was recovered in plain view and that the defendant told the officers that he knew the gun, which belonged to his cousin, was in the car. However, because the State did not present the testimony of the officer who read defendant his Miranda rights, the |7State argued that the question before the court was whether the defendant’s statement should be suppressed absent Miranda warnings. The State further argued that Cannatella’s question to the defendant in which he asked him “what’s this,” was not an interrogation within the purview of Miranda. The State further asserted that the defendant was not in “custody” at the time the statement, “this is my cousin’s gun,” was made. In response, the defendant argued that he was handcuffed and in “custody” but was not read his Miranda rights before being questioned about the gun.
Prior to ruling, the court framed the issue as: whether a handcuffed suspect *529 who is asked “what’s this,” gives rise to a custodial interrogation. The trial court denied defendant’s motions to suppress evidence and statement, noting that the officer initially handcuffed the defendant for safety reasons, but did not place him under arrest.
The State has the burden, in a hearing on a motion to suppress the evidence, of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Butler, 01-0907, p. 6 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124. In determining whether the ruling on a motion to suppress was correct, the court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at the trial of the case. State v. Washington, 00-1542 (La.App. 5 Cir. 2/14/01), 782 So.2d 639, 645, writ denied, 2001-0940 (La.2/8/02), 807 So.2d 859.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, law enforcement officers are authorized by LSA-C.Cr.P. art. R215.1, as well as state and federal jurisprudence, to conduct investigatory stops, which allow officers to stop and interrogate a person who is reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200.
“Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774. The violation of a traffic regulation provides reasonable suspicion to stop a vehicle. State v. Jones, 01-177 (La.App. 5 Cir. 10/17/01), 800 So.2d 958, 962. Evidence derived from an unreasonable stop will be excluded from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989. Once an officer has lawfully stopped a vehicle for a routine traffic violation, he is authorized to order both the driver and passenger out of the vehicle pending completion of the stop. State v. Gomez, 06-417, (La.App. 5 Cir. 11/28/06), 947 So.2d 81 (citing Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)).
After reviewing the entire record, including all pertinent evidence adduced at the trial of this case, we find that the trial court did not abuse its great discretion in ruling on defendant’s motion to suppress evidence. Regarding the initial investigatory stop, we find that the record clearly reflects that defendant was stopped for a traffic violation. Both Cannatella and Berry testified that they received a call from dispatch regarding a vehicle traveling the wrong way on 1-10. |9Cannatella further testified that upon responding to the call, he personally observed the defendant’s vehicle traveling the wrong way on 1-10. Cannatella explained that driving the wrong way on the interstate, or any roadway, is a traffic violation, so he conducted a traffic stop. Based upon this information, we find that the officer had reasonable suspicion to stop defendant’s vehicle.
*530 With respect to the seizure of the gun from defendant’s vehicle, the defendant argues that the exclusionary rule applies, which prohibits the receipt of evidence at trial which was acquired as the result of an illegal arrest. However, we find that defendant’s contention is misplaced, reasoning that the exclusionary rule is inapplicable to the gun which was seized prior to the occurrence of any unconstitutional police conduct.
In State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282, 1283-84, the Louisiana Supreme Court discussed the exclusionary rule:
The primary purpose of the exclusionary rule is to deter future impermissible police conduct. The rule, which requires the exclusion of evidence gained through impermissible official conduct, is designed to deter unconstitutional methods of law enforcement. Louisiana has codified this jurisprudential doctrine in Louisiana Code of Criminal Procedure Article 708(A) which provides that a defendant, adversely affected by unconstitutional police misconduct, may move to suppress any evidence on the grounds that it was unconstitutionally obtained. However, there are several well-settled judicial doctrines that supply exceptions to the exclusionary rule. If one of these doctrines is applicable, evidence seized following official misconduct may not require suppression. These three jurisprudentially created doctrines which prevent the suppression of evidence are: (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine. Wong Sun v. U.S., 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); U.S. v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); State v. Welch, 449 So.2d 468 (La.1984); State v. Guy, 575 So.2d 429 (La.App. 4 Cir.1991), writ denied, 578 So.2d 930 (La.1991).
In the present matter, we find that defendant’s argument that the gun should have been suppressed under the exclusionary rule lacks merit because it was obtained prior to the defendant’s alleged unconstitutionally obtained statement. | ^Additionally, we find that Cannatella had prior justification for his intrusion into the protected area of defendant’s vehicle, and thus, lawfully obtained the gun under the plain view exception.
In order for the plain view exception to the warrant requirement to apply, there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 116, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464. The “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983); State v. Smith, 07-815, p. 6 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 825, writ denied, 08-0927 (La.11/14/08), 996 So.2d 1088. An officer who peers into the interior of a vehicle during a legitimate traffic stop is not conducting a search within the meaning of the Fourth Amendment. State v. Schouest, 351 So.2d 462 (La.1977); State v. Daniels, 614 So.2d 97 (La.App. 2 Cir.1993), writ denied, 619 So.2d 573 (La.1993).
Here, once Cannatella had lawfully stopped defendant’s vehicle for a routine traffic violation, he observed the defendant lean forward and move something under *531 neath him in the area of the front seat floorboard. Thus, Cannatella ordered the defendant out of the vehicle pending completion of the stop. When asked to see defendant’s identification, the defendant indicated that his state identification card was located inside the vehicle. Upon returning to the vehicle to retrieve the identification, the driver’s side door was opened and Cannatella observed on the | nfloorboard, in plain view, a chrome revolver. Because the traffic stop gave the officer justification for being next to defendant’s vehicle, and the gun was immediately apparent to Cannatella when he opened the door, we find that Cannatella had the right to seize the gun based on the plain view, exception to the warrant requirement.
Since it appears that the trial court did not abuse its discretion in denying defendant’s motion to suppress evidence, the query now shifts to the trial court’s denial of defendant’s motion to suppress statement. Defendant contends that his statement should have been suppressed because it was made pursuant to a custodial interrogation and prior to defendant being advised of his Miranda rights.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817. On appeal, defendant does not appear to challenge the voluntariness of his statement, but only argues that his statement was made pursuant to a custodial interrogation and prior to being read his Miranda rights.
An arrest is the taking of one person into custody by another through actual restraint that may be imposed by force or that may result from submission of the person arrested to the custody of the one arresting him. LSA-C.Cr.P. art. 201. Whether a person has been arrested is determined by an objective test. Neither the person’s subjective impression nor the lack of formality of the arrest resolves the issue. State v. Fisher, 97-1133, p. 6 (La.9/9/98), 720 So.2d 1179, 1183. The | ^determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. Id.
A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Fisher, 97-1133 at 6, 720 So.2d at 1183. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended l’estraint on the person’s liberty. Id. “The circumstances indicating an intent to effect a restraint on the liberty of an accused, rather than the precise timing of the words “ ‘you are under arrest,’ ” determine when an arrest has been made.” State v. Hargrave, 411 So.2d 1058, 1060 (La.1982) (quotations omitted). This Court has recognized that the only relevant inquiry in the determination of whether there was a formal arrest or a restraint of freedom of movement to a degree associated with an arrest is how a reasonable man in the suspect’s position would have understood the situation. State v. Gant, 06-232, pp. 27-28 (La.App. 5 Cir. 9/26/06), 942 So.2d *532 1099, 1122, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599.
In the ease at bar, there appears to be a discrepancy between Cannatella’s trial testimony and his motion to suppress testimony regarding the point in time defendant was placed in “custody.” And although appellate courts may consider all pertinent evidence adduced at the pre-trial hearing and at the trial of the case, the contradictory evidence presented in this case appears to be critical when reviewed in conjunction with the trial court’s ruling on the motion to suppress.
Specifically, at the suppression hearing on November 12, 2008, Cannatella testified to the following order of events: 1) Defendant was ordered to place his hands on the car, and was then placed in handcuffs, for safety reasons, by troopers 11son the scene after the gun was recovered; 2) Cannatella overheard the defendant being advised of his Miranda rights and being told he was under investigation; 3) it was discovered that the gun found in defendant’s ear was stolen; 4) defendant was placed under arrest and re-Mirandized; and 5) defendant made a statement that he knew the gun was in the car and that it belonged to his cousin.
The court held the suppression hearing open and did not render a ruling on defendant’s motion until April 27, 2009, more than five months after the hearing. Upon ruling, the trial court framed the issue as “whether a handcuffed suspect” who is asked “what’s this,” gives rise to a custodial interrogation. The trial court then denied defendant’s motion to suppress evidence and statement, noting that the officer initially handcuffed the defendant for safety reasons, but did not place him under arrest. While the trial court was correct that Cannatella initially handcuffed the defendant for safety reasons, Canna-tella also testified that once he discovered that the gun was stolen, the investigation changed from one of safety to a criminal investigation for which defendant was placed under arrest before he gave the inculpatory statement.
At trial however, Cannatella testified to a different timeline with regard to the time at which defendant provided his statement in this case: 1) defendant was ordered by the troopers on the scene to place his hands on the hood of the car once the gun was recovered; 2) Cannatella overheard defendant being read his Miranda rights but could not recall which officer advised defendant of his rights; 3) defendant gave his statement regarding his knowledge of the gun and indicated that it belonged to a family member; 4) a criminal records check was performed; and 5) defendant was placed under arrest.
The suppression hearing testimony reveals that defendant was in custody at the time he made his statement, while the trial testimony tends to indicate that | ^defendant was not in custody at the time defendant’s statement was made. Although, as a general rule, an appellate court may review the testimony at trial in determining the correctness of the trial court’s pre-trial ruling on a motion to suppress, State v. Sherman, 04-1019, p. 1 (La.10/29/04), 886 So.2d 1116, 1116 (per curiam), the Court’s focus should be on the trial court’s ruling to determine whether an error was made. And while a review of the trial testimony may provide supplemental information relevant to the suppression issue, it may also disclose conflicting testimony relevant to the credibility of the witness. Id. In many cases the testimony at trial may not diverge from the evidence adduced at a pre-trial hearing on a motion to suppress. Id. at 2, 886 So.2d at 1116. An appellate court is therefore not required to review the testimony at trial in every instance. Id. Here, the *533 evidence adduced at the pre-trial hearing on the motion to suppress diverges greatly from the testimony presented at trial.
In this case, the trial court found that defendant was not in custody at the time he made his statement and thus, never addressed the issue of whether defendant was read his Miranda rights prior to giving his statement. However, because the testimony seems to indicate that defendant was in fact in custody at the time the statement was made, we could find the trial court erred in denying defendant’s motion to suppress on the grounds asserted in its ruling.
However, even if we find that the trial court erred in denying defendant’s motion to suppress statement, the erroneous admission of a statement or confession is subject to a harmless error analysis. State v. Harris, 2001-2730, p. 26 (La.1/19/05), 892 So.2d 1238, 1260, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005) Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. \ n,Robertson, 2006-1537, p. 9 (La.1/16/08), 988 So.2d 166, 172, writ denied, 08-2301 (La.9/4/09), 17 So.3d 950; State v. Barbour, 2009-1258, p. 14 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1150, writ denied, 2010-0934 (La.11/19/10), 49 So.3d 396, cert. denied, Barbour v. Louisiana, — U.S. —, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011). Considering all of the evidence, we find beyond a reasonable doubt, the guilty verdict rendered in the instant case was unattributable to any possible error by the trial court in denying the defendant’s motion to suppress the statement.
Defendant was convicted of violating LSA-R.S. 14:95.1 (possession of a firearm by a convicted felon). In order to convict a person of violating LSA-R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense. State v. Watson, 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
Actual possession of a firearm is not necessary to prove the possession element of LSA-R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession. State v. Day, 410 So.2d 741, 743 (La.1982); Anderson, supra. A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. State v. Johnson, 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. A person’s dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. Id., 03-1228 at 5, 870 So.2d at 999.
A defendant’s mere presence in an area where a firearm was found does not necessarily establish possession. Johnson, 03-1228 at 5, 870 So.2d at 999. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. Guilty knowledge |]Bmay be inferred from the circumstances and proved by direct or circumstantial evidence. Id., 03-1228 at 5, 870 So.2d at 998.
Cannatella testified both at the suppression hearing and at trial, that when he stopped the defendant for driving the wrong way down the interstate, their vehicles were facing each other, at which time he observed the defendant leaning over, “appearing to be placing something on the floorboard in front of him.” Cannatella *534 further testified that the defendant kept eye contact with him the entire time while he was “manipulating something on the floorboard in front and underneath him.” Additionally, Cannatella testified that once the driver exited his vehicle, he made several attempts to return to his vehicle but Cannatella prohibited him from doing so until a safety check of the vehicle was performed. Based on Cannatella’s testimony, there is a strong inference that the defendant bent over in an attempt to hide the weapon when he became aware that he was the subject of a traffic stop. Moreover, the evidence adduced at trial establishes that the gun was recovered on the front seat floorboard in plain view, indicating that defendant constructively possessed the gun and had guilty knowledge of its presence. Therefore, even if the trial court did improperly permit defendant’s statement regarding his knowledge of the gun into evidence, we find that beyond a reasonable doubt, the guilty verdict rendered in the instant case was unattributable to any possible error by the trial court in denying the defendant’s motion to suppress the statement.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that the State failed to provide him with Brady material. Specifically defendant contends that the State failed to disclose the fact that the fingerprints on the bill of information, from defendant’s previous conviction, were unreadable and could not be used to prove defendant’s prior conviction. Defendant further contends that the information 1 ^withheld by the State concerning the unusable fingerprints, was “material” to defendant’s guilt, and had the evidence been properly disclosed, the outcome of the trial would have been different. Therefore, defendant submits that the trial court erred in denying defendant’s motion for mistrial given the prejudicial nature of the evidence and accordingly requests a reversal of his conviction.
In response, the State argues that the exhibits used to establish defendant’s prior conviction were introduced into evidence and available for defense counsel’s inspection since October 15, 2009, during the first trial of this matter. Thus, the State submits that the defendant was informed well in advance of trial that the fingerprints on defendant’s arrest register connected with his prior conviction, and not those contained on the bill of information, would be used to establish defendant’s felon status. Additionally, the State maintains that the defendant was not denied a fair trial as a result of this evidence, noting that defense counsel was able to cross-examine Prudhomme regarding the fingerprint comparison performed. Finally, the State contends that defendant has failed to offer any specific argument or allegations to establish the prejudice he has suffered by the alleged “late disclosure” of the unsuitability of the fingerprints on the bill of information, and thus, urges this Court to find such claim meritless.
At the trial of this matter on June 21, 2011, Aischa Prudhomme, of the Jefferson Parish Sheriffs Office Crime Laboratory, was qualified as an expert in the field of fingerprint identification. Prudhomme testified that she was unable to compare the fingerprints located under defendant’s name on the back of the bill of information in case number 379-642 because the fingerprints were not suitable for comparison. Prudhomme explained that if the fingerprints she is provided by the District Attorney’s office are unsuitable for comparison, alternate records that correlate with the conviction will be compared. Thus, to prove defendant’s identity |1sas the individual previously convicted in case *535 number 379-642, Prudhomme testified that she compared defendant’s fingerprints with those contained on the arrest register associated with case number 879-642 “I,” Orleans Parish Criminal District Court. Prudhomme testified that pursuant to her analysis, the defendant’s fingerprints matched the fingerprints associated with defendant’s previous arrest for armed robbery and attempted murder. Prudhomme further testified that she did not prepare a report in this case, but that she did inform the District Attorney’s Office in 2009, when the case was first brought to her for analysis, that the fingerprints located on the back of the bill of information in the certified conviction packet were not suitable for comparison.
Defense counsel objected to Prud-homme’s testimony on the grounds that the State failed to inform him that the prints on the back of the bill of information in case number 379-642 were unsuitable for comparison, and moved for mistrial pursuant to Brady. In response, the State argued that all of the exhibits at issue, including the certified conviction packet in case number 379-642, which contained the bill of information and the arrest register, were provided to defense counsel when the case was first tried in 2009. The State also argued that at the previous trial, defense counsel cross-examined Prudhomme concerning the fingerprint comparisons. Defendant’s request for a mistrial was denied by the trial court.
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the State of evidence favorable to the accused after it receives a request for it violates a defendant’s due process rights where the evidence is material to either guilt or punishment, without regard to the good or bad faith of the prosecutors. See also State v. Bright, 02-2793, pp. 5-6 (La.5/25/04), 875 So.2d 37, 41-42. The duty to disclose is applicable even where there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107, 96 |13S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). The State’s due process duty to disclose applies to both exculpatory and impeachment evidence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); State v. Kemp 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. Brady also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. Giglio v. United States, supra. See also State ex rel. Guise v. State, 00-2185, p. 2 (La.10/15/02), 828 So.2d 557, 558.
Evidence is “material” under Brady only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A reasonable probability is one that is sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. A reviewing court determining materiality must ascertain “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566,131 L.Ed.2d 490 (1995).
While the United States Supreme Court has emphasized the prosecution’s duty to disclose exculpatory evidence, it has not specifically spoken on the timing of such disclosures. But the Louisiana Supreme Court has held that late disclosure as well as non-disclosure of exculpatory evidence may deprive the defendant of a fair trial. Kemp, supra; State v. Williams, 448 So.2d *536 659, 665 (La.1984). See also State v. Lande, 06-24, pp. 23-24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 296, writ denied, 06-1894 (La.4/20/07), 954 So.2d 154.
Moreover, discovery violations are not grounds for reversal unless they have actually prejudiced the defendant. State v. Ganick, 03-0137, p. 5 (La.4/14/04), 870 So.2d 990, 993 (per curiam); State v. Strickland, 398 So.2d 1062, 1067 (La.1981).2n Even a discovery violation involving the State’s failure to disclose exculpatory evidence does not require reversal under the Due Process Clause “unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.” Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).
Additionally, since mistrial is a drastic remedy, in instances where it is not mandatory, this relief is warranted only when the defendant suffers substantial prejudice that deprived him of any reasonable expectation of a fair trial. State v. Lee, 09-37, (La.App. 5 Cir. 5/12/09), 15 So.3d 229, (citing State v. Harris, 00-3459, p. 9 (La.2/26/02), 812 So.2d 612, 617). The decision to grant or deny a mistrial is within the trial court’s sound discretion. The denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Lee, supra.
In the present matter, we find that the evidence at issue does not constitute Brady material, and that the alleged untimely disclosure of the “fingerprint usability” did not prejudice defendant such that a mistrial should have been granted. As previously discussed, the Brady violation that defendant complains of is the fact that he was not informed that the fingerprints located on the bill of information in case number 379-642 (the prior conviction used to establish defendant’s felon status) were unusable for comparison.
First, the information at issue was disclosed to defense counsel prior to, or during, the first trial of this matter in 2009, when Prudhomme testified, and was cross-examined, regarding the fingerprint comparisons conducted.
Additionally, at the first trial, the State introduced into evidence a certified copy of the minute entry, bill of information, docket master, arrest register, and waiver of rights in case number 379-642. Second, even assuming that the subject 121 evidence was not disclosed in the first trial of this matter, it cannot be argued that the evidence at issue is “material” under Brady because the outcome of the trial would not have been different if the evidence would have been timely disclosed to the defense. It is well settled that to establish the defendant as the same person convicted of a prior felony, the State need not use a specific type of evidence, and that prior convictions may be proven by any competent evidence. State v. Lindsey, 99-3302, p. 7 (La.10/17/00), 770 So.2d 339, 344. Proof of identity can be established in various ways, including the State presenting: (1) the testimony of witnesses to prior crimes, (2) expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, (3) photographs contained in a duly authenticated record, or (4) evidence of identical driver’s license number, sex, race, and date of birth. State v. Isaac, 98-0182, p. 7 (La.App. 4 Cir. 11/17/99), 762 So.2d 25, 28-29, writ denied, 00-0239 (La.1/26/01), 781 So.2d 1255.
In State v. Armstead, 542 So.2d 28 (La.App. 4th Cir.1989), writ denied, 566 So.2d 391 (La.1990), the state produced an arrest register with fingerprints on the back of it. There were no fingerprints on the bill of information or minute entries of the guilty *537 plea. However, because there was sufficient information on the documents supporting the conviction to prove the eonnexity with the arrest register, the court found that the State could use the fingerprints from the arrest register to show that the defendant was the same person who committed the predicate offense. Armstead, 542 So.2d at 30-31.
Similarly, in the instant case, during the testimony of Prudhomme, the State introduced three exhibits: 1) the fingerprints taken from the defendant on the morning of the first trial; 2) the arrest register containing defendant’s fingerprints associated with case number 379-642 for attempted murder and armed robbery, | ^alleged to have occurred on August 4, 1995; and 3) a certified packet from defendant’s prior conviction for attempted murder and armed robbery (case number 379-642) containing the bill of information, guilty plea form, docket master, minute entry, arrest register, and screening action form.
Prudhomme then matched the fingerprints from the arrest register with the certified conviction packet to show that defendant was the same person who committed the predicate offense. Not only does the name, date of birth, and address of defendant contained in the certified conviction packet match that on the arrest register, but the offenses charged, the date of the offenses were committed, the victim of the crime, and the folder number (702400) matches the conviction and the arrest register in case number 379-642. Thus, even if the State had failed to disclose Prudhomme’s inability to use the fingerprints on the bill of information, the outcome of the trial would not have differed since the State could, as it did, use the fingerprints from the arrest register to show that the defendant was the same person who committed the predicate offense.
Finally, we do not find that defendant was prejudiced and/or was unable to receive a fair trial because of this information. First, as argued by the State, the defendant does not point to any specific prejudice he has suffered as a result of the State’s failure to provide him with this information. Second, the jury in this case listened to the testimony of Prudhomme who testified that the fingerprints on the bill of information were not suitable for comparison. And third, defendant cross-examined Prudhomme extensively on this issue, regarding the fingerprints from the arrest register being used to establish defendant’s identity. Accordingly, we find that the trial court did not abuse its discretion in denying defendant’s motion for a mistrial.
Igjln light of the foregoing, we determine that the evidence does not support the conclusion that the State violated Brady, finding that the failure to disclose the subject information was not “material” evidence as to the defendant’s guilt or punishment, and that the results of the proceedings would not have been different if disclosed prior to trial.
We also find that the trial court did not abuse its discretion in denying defendant’s motion for mistrial based on Prudhomme’s inability to compare the fingerprints contained on the bill of information to establish defendant’s identity as previously convicted felon.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
*538 First, although the commitment reflects that defendant was given a proper advisal of the time period for seeking post-conviction relief, it appears that the transcript reflects an incomplete advisal. The transcript reflects that defendant was advised that he had “30 days to appeal this sentence and two years to file post-conviction relief.” The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598.
This Court has recently corrected this error patent by way of its opinion. See State v. Neely, 08-707, p. 9 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272; State v. Davenport, 08-463, pp. 10-P.I24 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473.
Accordingly, this Court advises defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See Neely, supra; Davenport, supra.
Next, although the commitment reflects that defendant’s sentence is to be served at hard labor, the transcript does not. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983).
LSA-C.Cr.P. art. 879 requires the trial court to impose a determinate sentence.
If a sentence is indeterminate in violation of LSA-C.Cr.P. art. 879, it should be remanded for the trial judge to clarify the sentence on resentencing. State v. Lachney, 621 So.2d at 846 (La.App. 5 Cir.1993); State v. Lai, 04-1053 (La.App. 5 Cir. 4/26/05), 902 So.2d 550, writ denied, 05-1681 (La.2/3/06), 922 So.2d 1175. However, when the underlying statute requires the sentence to be served at hard labor, allowing no discretion to the trial judge, the error is harmless. State v. Stewart, 10-389 (La.App. 5 Cir. 5/10/11), 65 So.3d 771, writ denied, 11-1245 (La.1/20/12), 78 So.3d 140.
Here, defendant was convicted of being a felon in possession of a firearm, which requires that the sentence imposed be served at hard labor. (See, LSA-R.S.14:95.1). Thus, because the underlying statute affords the trial judge no discretion, the error was harmless and the sentence is not an impermissible indeterminate sentence. Therefore, we find that no corrective action is necessary.
125Third, the record indicates that the trial judge failed to impose statutory restrictions at sentencing. Although the trial judge failed to mention the restrictions, such conditions are deemed to exist by operation of law, under LSA-R.S. 15:301.
In State v. Williams, 00-1725, pp. 14-15 (La.11/28/01), 800 So.2d 790, the Louisiana Supreme Court found:
In instances where these restrictions are not recited at sentencing, La. R.S. 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to *539 impose punishment in conformity with that provided in the statute.
Since the benefits provision of LSA-R.S. 14:95.1 is self-operating under La. R.S. 15:301.1, we find no corrective action is necessary.
Fourth, at the time of defendant’s offense, LSA-R.S. 14:95.1(B) provided for a sentence of imprisonment at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and a mandatory fine of not less than one thousand dollars nor more than five thousand dollars. In this case, neither the commitment nor the transcript reflects the imposition of the mandatory fine required under the statute. Neither party has raised this issue on appeal.
The Louisiana Supreme Court has held that an appellate court has the authority under LSA-C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, even if the issue of an illegal sentence was not raised by the defendant or the State. State v. Campbell, 08-1226 at 8 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076 at 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. This Court has used that authority to notice the failure of the trial court to impose a mandatory fine and the authority to remand the matter to the trial court for imposition of a mandatory fine. 12(jHowever, this authority is permissive rather than mandatory. In Campbell, supra, this Court noted defendant’s indigent status and declined to correct an illegally lenient sentence where the district court failed to impose a mandatory fine.
In the present case, we note that defendant is indigent as surmised by his representation by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we find that no corrective action is necessary and decline to remand this matter for imposition of the mandatory fine. (See also State v. Turner, 08-1188, p. 14 (La.App. 5 Cir. 5/12/09), 13 So.3d 695, 704-05, unit denied, 09-2100 (La.8/18/10), 42 So.3d 400.)
Accordingly, we affirm defendant’s conviction and sentence.

AFFIRMED