ROBERT A. CHAISSON, Judge.
lain this appeal, defendant, Dwayne Williams, seeks review of his conviction for possession with intent to distribute cocaine. For the reasons that follow, we affirm defendant’s conviction and sentence.

PROCEDURAL HISTORY

On August 12, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession with intent to distribute cocaine in violation of LSA-R.S. 40:967(A). At his arraignment, defendant pled not guilty. On October 4, 2012, the case proceeded to a bench trial during which the trial judge heard defendant’s motion for preliminary examination and motions to suppress evidence and statement. After considering the evidence presented, the trial judge denied defendant’s motions and found defendant guilty as charged. On October 26, 2012, the trial court denied defendant’s motion for new trial and thereafter sentenced defendant to twenty years in the Department of Corrections with credit for time served. Defendant now appeals.

UFACTS

In the afternoon hours of July 21, 2011, several police officers from the Jefferson Parish Sheriffs Office Narcotics Division went to execute a search warrant at a house on Fisk' Court[1] in Marrero. When the officers arrived, they observed two vehicles, a white Buick with a Texas license plate and a red pickup truck, parked in the driveway of the house to be searched. As the officers, clothed in police gear, approached the residence, Sergeant Shane Klein observed defendant, who was positioned in the front passenger seat of the Buick, throw an amber-colored prescription pill bottle to the back seat. Upon seeing this, Sergeant Klein approached the vehicle and secured defendant while Officer Módica went to the driver’s side and *1197 secured the other occupant. From his vantage point outside the vehicle, Sergeant Klein observed that the object defendant discarded was a prescription bottle containing objects that were consistent with crack cocaine.
Detective Sean Cursain and his K-9 showed up shortly thereafter. A dog sniff was performed on both the exterior and interior of the vehicle, and the dog positively alerted to the presence of narcotics. After the positive alert by the dog, the officers retrieved the pill bottle from the back of the vehicle. A preliminary field test was performed on the substance, and it showed positive for the presence of cocaine.
Defendant was thereafter advised of his rights and signed a waiver of rights form indicating that he understood his rights, wished to waive those rights, and wanted to make a statement. Defendant gave a taped statement in which he admitted that the crack cocaine contained in the pill bottle was his.
In the meantime, the officers executed the search warrant on the house. During the course of the search, Detective James Shook discovered a red, white, |4and blue checkered shirt hanging in a closet. Inside the pocket of the shirt, the officer found an off-white rock-like object contained within a clear plastic bag. Based on his training and experience, Detective Shook immediately believed the object to be crack cocaine and retrieved the object from the shirt. In the closet directly above the shirt, the officer located a wallet that contained a TWIC card with defendant’s picture and name. In addition, the officer found “what looked like a bank bill” with defendant’s name and the Fisk Court address. As a further result of the search, the officers discovered and retrieved a bot-tie of inositol powder,[2] a digital scale, and a hand mixer that had white specks consistent with cocaine on the attachments of the mixer.
Following the execution of the search warrant, defendant was informed about the additional narcotics that were found in a closet in the house. Defendant thereafter gave an oral statement and admitted ownership of the shirt and the narcotics found therein.
At trial, Marcelle Folse, an expert in the field of forensic analysis of controlled dangerous substances, testified that in connection with this case, she analyzed an amber prescription bottle containing numerous pieces of off-white material, a clear plastic bag holding an off-white material, and a mixer with two blades that had a white residue. Her examination revealed that these items contained cocaine.
In addition, Bonnie DuBourg, an expert in DNA identification, testified that she analyzed a swab from defendant and a swab from a clear plastic bag containing a white rock substance. She testified that a partial DNA profile obtained from the clear plastic bag was consistent with the DNA profile obtained from the reference buccal swab of defendant.
1 -JJENIAL OF MOTION TO SUPPRESS
On appeal, defendant challenges the trial court’s denial of his motion to suppress evidence. Defendant specifically argues that the search of the vehicle was beyond the scope of the warrant which only specified the residence.
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing *1198 the cause for issuance of the warrant. LSA-C.Cr.P. art. 162(A). A search warrant shall particularly describe the person or place to be searched, the person or things to be seized, and the lawful purpose or reason for the search or seizure. LSA-C.Cr.P. art. 162(C).
In the instant case, Detective Donald Clogher prepared the “Application for and Affidavit in Support of a Search and Seizure Warrant” based on information obtained from a confidential informant and a subsequent controlled buy between the confidential informant and a black male, identified as Alton Perry, who- returned to 2020 Fisk Court in Marrero after the controlled buy.[3] Based on the information detailed in the application for search warrant, Detective Clogher requested that an order of search be issued for:
2020 Fisk Avenue in Marrero, Louisiana; located within the Parish of Jefferson and State of Louisiana, authorizing the search for controlled dangerous substance, more specifically crack cocaine; any instrumentalities employed in its use, packaging and distribution; any documentation regarding residency or associated with narcotic trafficking; and any assets, including U.S. Currency, which may be the proceeds of the narcotic trafficking, curtilage and any electronic communication devices, or electronic storage devices and all data stored within. [Emphasis in original.]
A search warrant was thereafter issued for the “aforesaid residence for the property specified,” which property was 2020 Fisk Avenue in Marrero, Louisiana. Defendant now contends that the search of the vehicle was outside the scope of the | (¡search warrant. In particular, defendant contends that the warrant only authorized the search of the residence and in no way referenced “the curtilage, or the grounds, or the premises, or the driveway, or any vehicle that happened to be there.” In contrast, the State contends that the search of the vehicle was valid pursuant to the warrant because it was parked in the driveway of the residence which was the target of the search and particularly described in the warrant.
Having reviewed . applicable jurisprudence, we find that defendant’s argument on this issue is without merit. This Court has held that a warrant authorizing the search of a particularly described premises permits the search of a vehicle located on the premises targeted for the search and subject to the authority of the warrant. The rationale behind this holding is that the vehicle is capable of concealing the sought-after contraband. State v. Washington, 11-716 (La.App. 5 Cir. 3/13/12), 90 So.3d 1157; State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 5, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469.
In State v. Washington, supra, a confidential informant provided information that a black male, who drove a red Monte Carlo, was distributing large quantities of cocaine from a particular residence in Westwego, 645 Emile Avenue. Following confirmation of this information and the completion of a controlled buy at this residence, the officers filed an application for and affidavit requesting a search warrant “for the residence and property including all vehicles and buildings located at 645 Emile Avenue, Westwego, Louisiana.” Based on this affidavit, a search warrant was issued, which stated: ‘You are hereby ordered to search forthwith the aforesaid premises for the property specified ...,” where the “property specified” is the “one *1199 story, single family dwelling, located at 645 Emile Avenue, Westwego, Louisiana.” On appeal, defendant argued that the trial court erred in failing to suppress the evidence. Specifically, he argued that the cocaine 17seized from the red Monte Carlo should have been suppressed because the scope of the search warrant did not encompass the vehicle. This Court disagreed with defendant’s argument. In Washington, supra, although the affidavit on which the warrant was based referred several times specifically to the Monte Carlo, the warrant itself did not refer to any vehicles. Nonetheless, this Court found that the search of defendant’s vehicle was valid pursuant to the warrant since it was parked in front of the residence which was the target of the search and which was particularly described in the warrant.
In State v. Smith, 02-1842 (La.9/20/02), 827 So.2d 1122, the Louisiana Supreme Court held that a vehicle located in the defendant’s driveway in an area behind a fence splitting the driveway of the defendant’s home was on the premises targeted for the search and thus was subject to the authority of the warrant.
We likewise find that the search of the white Buick and the subsequent seizure of the cocaine were valid pursuant to the warrant because it was parked in the driveway of the residence which was the target of the search and which was particularly described in the warrant.[4] Thus, we find no error in the trial court’s denial of defendant’s motion to suppress the evidence seized from the vehicle.
Moreover, even without the cocaine seized from the Buick, the State presented sufficient evidence to prove defendant’s guilt. At trial, Detective Shook testified that during the search of the residence pursuant to a warrant, he found a red, white, and blue checkered shirt hanging in a closet. Inside the pocket of the shirt, the officer discovered an off-white rock-like object contained in a clear plastic bag. Subsequent testing of this object revealed that it contained cocaine, and that the gross weight of the cocaine was 4.74 grams. The officer also located a wallet directly above the checkered shirt in the closet. The wallet contained a |8picture identification of defendant as well as paperwork with defendant’s name and the Fisk Court address. Following the discovery of the narcotics in the closet, defendant gave an oral statement admitting that the cocaine was his.
During the search of the residence, the officers also recovered a bottle of inositol powder, a digital scale, and a hand mixer that had white specks consistent with cocaine on the attachments of the mixer. At trial, Sergeant Klein testified that based on his training and experience as a narcotics officer, the amount of cocaine, as well as the scales and the mixer, were indicative of distribution of narcotics. In addition, Detective Shook testified that the bottle of inositol, a cutting agent for cocaine, evidenced the intent to manufacture or distribute cocaine. Given this evidence presented by the State, the trial judge, as the trier of fact herein, could have reasonably concluded that defendant was guilty of possession with intent to distribute cocaine. Accordingly, even if the district court erred in denying the motion to suppress, the cocaine seized from the white Buick was not necessary for a finding of guilt, and any error would be harmless. See State v. Boyd, 94-641 (La.App. 5 Cir. 12/28/94), 649 So.2d 80, 83.
*1200 Based on the foregoing, we find no merit to the arguments raised by defendant in this assigned error.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review reveals that the trial court failed to properly advise defendant of the two-year prescriptive period for filing post-conviction relief during the sentencing proceedings. LSA-C.Cr.P. art. 930.8 provides “[n]o application for post-conviction relief, including applications which seek an out-of-time appeal, |9shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final.”
The October 26, 2012 minute entry reflects that the trial court advised defendant that he had “two (2) years after judgement of conviction and sentence has become final to seek post-conviction relief.” However, the transcript from the proceedings shows that the trial court informed defendant that he had “two years from the date the sentence becomes final to file post-conviction relief application.”
This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisement incomplete. State v. Milton, 09-866 (La.App. 5 Cir. 3/9/10), 40 So.3d 129, 132. In accordance with this Court’s routine pi'actice, we advise defendant, by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under thé provisions of LSA-C.Cr.P. arts. 914 or 922. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030; State v. Taylor, 12-25 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 538; and State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473.
Other than this notification error, our review of the record reveals no further errors that require corrective action. Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence.

AFFIRMED.

. There are inconsistencies in the record with regard to whether the residence listed in the warrant is on Fisk Street, Avenue, or Court. Although the warrant references Fisk Avenue, the proper designation for the residence is Fisk Court.

. At trial. Officer Shook testified that inositol powder is a common mixing agent for cocaine.

. Defendant’s mother, Mary Williams, lived at the Fisk Court residence. Alton Perry, another son of Mary Williams, was the target of the search warrant and was at the residence when the police arrived to execute the warrant.

. In his appellate brief, defendant also argues that the search of the vehicle was not authorized by any of the exceptions to the warrant requirement. However, we find it unnecessary to address this argument in light of our finding that the search of the vehicle fell within the scope of the warrant.